# J. G. MARTY, CHARLES W. SCARRITT and W. E. MINOR v. KANSAS CITY LIGHT & POWER COMPANY, Appellant.

### Division One, March 7, 1924.

1. **PRACTICE: Motions After Judgment.** Motions by defendant asking the court to state its findings of fact separately from its conclusions of law, and to give certain instructions attached thereto, filed two days after the court had rendered judgment, finding the issues in favor of plaintiffs and against defendant, came too late.

2. **APPELLATE PRACTICE: General Finding: No Declarations: Substantial Evidence.** In an action at law, a jury being waived, and no declarations of law being given or asked, and no separate finding of facts being made or requested before judgment entered, a general finding by the court, if supported by substantial evidence and no error was committed in the admission or rejection of evidence, cannot be disturbed on appeal. And a suit to recover excessive and unlawful rates charged consumers by a public utility, is an action at law.

3. **PUBLIC UTILITY: Excessive and Unlawful Rates: Charges Between Time of Filing Schedule and Hearing.** Where an electric light and heating company filed with the Public Service Commission its schedule of rates for steam heating in a certain city, to go into effect on a named future date, the filing of the schedule was notice to the Commission, and said schedule became effective on the date designated, without notice to consumers, and thereafter, until set aside by the Commission, its designated rates were lawful rates, and could have been set aside only after a hearing.

4. ———: ———: ———: **Finding by Commission: Proof of Excess.** In the trial of the question whether the schedule rates exacted of consumers for steam heat between the designated date in which the schedule was to go into effect and the date on which the Public Service Commission found them to be excessive and reduced them, were excessively high and unjust and therefore unlawful, the consumers do not establish such contention by introducing the order of the Commission finding that the steam heating rates were excessive, but making no allocation or separation of values and operating expenses between the uses of the plant for steam heating and electric lighting, and expressing an unwillingness to do

so "without further investigation," where, upon a subsequent complaint by the company that its rates for both electric service and steam heating were inadequate and confiscatory, the Commission, by an investigation covering the same period, and allocating the rates for the two kinds of service, found that the steam heating rates established by its former order inadequate, unjust and unreasonably low and had failed to produce operating expenses. The first finding was not conclusive, but was wholly overcome and destroyed by the second finding.

5. ———: **Excessive Rates: Operation at a Loss.** There is no basis for a holding that the rates exacted of consumers for steam heat were excessively high and unjust where the public utility company produces evidence showing, by actual figures that, during the period covered by the rates collected, its heating department was operated at an actual loss, without taking into consideration returns on the investment, and no counter evidence is offered.

6. ———: ———: **Coercion.** To threaten consumers that if they do not pay the reasonable and just rates established by the public utility the service will be discontinued, is not coercion, nor an exaction from them of anything they are entitled to recover.

---

Headnote 1: **Trial,** 38 Cyc. 1950, 1959. Headnote 2: **Appeal and Error,** 4 C. J. sec. 2853; **Steam,** 36 Cyc. 1261 (1926 Anno). Headnotes 3 to 6: **Steam,** 36 Cyc. 1261 (1926 Anno).

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

REVERSED.

*John H. Lucas, William C. Lucas* and *Ludwick Graves* for appellant.

The filing of the schedules of June 19, 1917, effective August 1, 1917, established and fixed the only legal rates that the appellant might charge and they remained in full force and effect until abrogated on a hearing by the Commission. Sec. 88, pp. 622-23, Laws 1913; Sec. 10497, R. S. 1919, par. 2; Laws 1913, p. 638, sec. 105(a). For power of Commission to stay increased rates, see Secs. 10491, 10478, 10479, R. S. 1919. For penalty for noncompliance, see Sec. 83, p. 619, Laws 1913; Sec. 10492, R.

S. 1919. For defense in case of excessive charges, see Sec. 85, p. 620, Laws 1913; R. S. 1919, sec. 10494; Sec. 88, par. 2, pp. 622-623, Laws 1913; R. S. 1919, sec. 10497, sub-sec. 2; Lusk v. P. S. Com., 268 Mo. 109; Suburban Water Co. v. Borough of Oakmont, Pub. U. Rep. Ann. 1920 (F) 1. c. 813. All orders of Commission are prima-facie lawful and reasonable. Sec. 123, p. 647, Laws 1913; R. S. 1919, sec. 10534. "There can be no legal rate except the last tariff rate." Suburban Water Co. v. Borough of Oakmont, Pub. Utility Rep. Ann. 1920 F. 1. c. 813; Harrison Electric Company v. Citizens' Ice & Storage Co., 232 S. W. 932, 149 Ark. 502; Burwind White Coal & Mining Company v. Chicago & Erie Railroad Co., 235 U. S. 371, 376, 59 Law Ed. 276.

*Lathrop, Morrow, Fox & Moore* and *Scarritt, Jones, Seddon & North* for respondents.

(1) There is nothing before this court for determination except the question as to whether the plaintiffs, upon the pleadings and the evidence adduced, made a case on any possible theory. In other words, the only question here is whether or not defendant's demurrer to the evidence should have been sustained. The trial court's findings upon the facts are conclusive, and the presumption is that the trial court properly applied the law to the facts, no declarations of law being properly or timely requested. Daudt v. Keen, 124 Mo. 111; Bank v. Marbee, 198 Mo. 465; Baumhoff v. Railway Co., 171 Mo. 125; Butler Co. v. Boatmen's Bank, 143 Mo. 23. (2) Plaintiffs made a complete case both under the statute and the common law. The common law, as well as the statute, recognizes the right and affords the remedy to consumers to recover any loss or damage suffered by them by reason of the exaction of any unlawful or unreasonable rate by a public service corporation, that is, the right to recover the excess charged and collected over and above a reasonable rate. Reagan v. Farmers Loan & Trust Co., 154 U. S. 362; Abilene Cotton Oil Co, v, Railway Co., 38 Tex.

Civ. App. 366; Texas & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426; W. U. Tel. Co. v. Call Publishing Co., 181 U. S. 92; State ex rel. v. Railway Co., 265 Mo. 646, 690. (3) The mere filing of the heat tariff on July 19, 1917, did not conclusively establish the same as a lawful rate. The rate schedule in question, with August 1, 1918 named therein as its effective date, was assailed by the city of Kansas City and by the heat consumers immediately upon their receiving knowledge of such tariff, and, upon a hearing, the Public Service Commission found and declared that the steam heat rate named therein was an unreasonable and unlawful rate. The prima-facie lawfulness of this rate was, therefore, overthrown. It never was, in fact, a lawful rate. The mere filing of a tariff is not an approval of the same by the Commission. Ind. Brewing Co. v. Railway Co., 4 Mo. P. S. C. 623. The steam heat tariff was void because it violated the terms of Sec. 10477, R. S. 1919. Ark. Fuel Co. v. Railroad Co., 16 I. C. C. 95; Poor Grain Co. v. Railroad Co., 12 I. C. C. 418; Coomes v. Railway Co., 13 I. C. C. 192; Re New York Steam Co., P. U. R. 1918 B, 866; Parlin & O. Co. v. Railroad, P. U. R. 1915 A, 460; Meeker v. Lehigh Railroad Co., 236 U. S. 412; Texas & P. Ry. Co. v. Oil Co., 204 U. S. 426. (4) Appellant cannot successfully assert that the decision of the Commission in Cause No. 1353 was confiscatory or unconstitutional. (a) The alleged defense that the Public Service Commission fixed steam heat rates in Cause No. 1353 (5 Mo. P. S. C. 664-683) which were unreasonable and confiscatory, is clearly an attempt to collaterally attack that decision of the Commission. This is not permissible. The Public Utilities Act provides for a direct attack upon or review of any decision or order of the Commission, but expressly forbids a collateral attack. Sec. 10522, R. S. 1919; Sec. 10526, R. S. 1919. (b) Not only does the statute forbid a collateral attack upon a decision of the Commission, but the established general law is, that where the statute provides a complete, legal remedy, that remedy is exclusive. This question has been often raised in the matter of reviewing or attacking de-

cisions of Public Service Commissions, and in every such case, the decision of the court has been to the effect that the statutory remedy prescribed for a court review of the decisions of Public Service Commissions is exclusive, and if not taken advantage of, the decisions of the Commission cannot be assailed in a collateral proceeding. Willapa Power Company v. Public Service Commission, 188 Pac. 464; State ex rel. v. O. R. & N. Company, 68 Wash. 160; State ex rel. v. Railroad Co., 68 Wash. 257; City of Chicago v. O'Connell, 278 Ill. 591; Denver & S. P. Ry. Co. v. Engelwood, 161 Pac. 161; Fletcher Paper Co. v. Railway Co., 164 N. W. 528; Detroit & M. Ry. Co. v. Fletcher Paper Co., 248 U. S. 30; Marin Munic. Water Dist. v. Water Co., 173 Pac. 473.  (c)  If it were a proper and tenable issue whether or not the steam-heat rates fixed by the Public Service Commission in Cause No. 1353 were confiscatory, it would be a question of fact, and the burden of proof to show the confiscatory character of the rates fixed would be upon the party (appellant) asserting that the same were confiscatory.  In this case, a law case, not an equity case, the court, sitting as a jury, found "the issues herein in favor of plaintiffs and against defendant."  That finding is conclusive on this issue, if it was a tenable issue, and it is not within the province of this court to weigh the evidence or to decide anew this question of fact.  We may add that the evidence adduced by the defendant (appellant) was not sufficient in kind or character to have warranted a finding that the rates fixed by the Public Service Commission in Cause No. 1353 were confiscatory.  To maintain, even in a proper, direct proceeding, that rates which have been fixed by competent authority, are confiscatory, and to overthrow the presumptive correctness and legality of rates so fixed, the evidence must be complete, definite, clear and unquestionable.  Missouri Rate Cases, 230 U. S. 474; Allen v. Railway Co., 230 U. S. 553; Wood v. Vandalia Railroad Co., 231 U. S. 1; L. & N. Railroad Co. v. Railroad Comm., 208 Fed. 35.

LINDSAY, C.—The respondents (plaintiffs) brought this suit against appellant, a public service company engaged in furnishing heat, light and electric current to consumers in Kansas City, to recover the amount of alleged excess charges paid by certain consumers for steam heat furnished during the period from August 1, 1917, to March 1, 1918. The petition contains 104 counts. The plaintiffs sue as assignees of the several claims of the respective consumers named in the various counts. Plaintiffs were given judgment on each of the several counts, and in the aggregate sum of $26,829.59.

Preliminary to a statement of the issues made upon the pleadings, and otherwise, a brief outline may be given. Prior to August 1, 1917, the defendant was charging and collecting from consumers, for heat furnished, compensation based upon rates contained in its schedule on file with the Public Service Commission, and in force as such. On June 23, 1917, the defendant filed with the Public Service Commission a new schedule, materially increasing the rates for heat, and to take effect on and after August 1, 1917, and that rate, no order suspending it having been made by the Commission, went into effect on August 1st. On September 13, 1917, a formal complaint against the new rates was filed by Kansas City, and shortly after Mary B. Case and a large number of other consumers, by an intervening petition, joined in the complaint, the ground of which was that the rates were excessive and unjust. The defendant company appeared and answered. The Commission thereupon ordered and entered upon an investigation, under Commission Case No. 1353.

On February 11, 1918, the Commission stated its findings and conclusions upon the evidence before it, and entered its order wherein it held that the rates and prices then being charged by the defendant company for steam heating were "unjust and unreasonable, and that said rates and prices are unreasonably high." The Commission thereupon further, by said order, set forth as just and reasonable to be charged for said service, a

schedule of monthly rates and prices somewhat lower, and ordered that the defendant company should not after March 1, 1918, charge in excess of the rates so fixed. The defendant company did not bring a statutory proceeding to review the order, or otherwise proceed to annul it. The plaintiffs in the instant case sue to recover the amount of the difference between what was actually paid by the consumers under the company's schedule, in the period from August 1, 1917, to March 1, 1918, and the amount they would have been required to pay during the same period measured by the schedule put into effect by the Commission on March 1, 1918. The real controversy here is whether the defendant is liable at all. There is no dispute as to the amount of the excess as measured by actual payment, and by the rate put into effect on March 1, 1918, under the order of the Commission. The three schedules of rates already mentioned, that which obtained prior to August 1, 1917, that which was filed by the defendant and was in effect until March 1, 1918, and that which the Commission put into effect on March 1, 1918, were put in evidence, though not printed in the record here; but, by stipulation, reference is made to them as set forth in the published official report of the Commission, where they may be found, in 5 P. S. C. Report, page 664. There is no necessity for setting them out here.

Summarized, the allegations of the petition are (1) that the schedule in effect prior to August 1, 1917, was a reasonable and just schedule; (2) that the schedule filed June 23, 1917, was unreasonable, excessive and unlawfully high, and was unlawful in that defendant made no publication thereof for thirty days, as required by law, or otherwise, and no notice of the filing thereof was given to customers; (3) that defendant was at fault in giving no notice to its consumers of said filing, thereby unlawfully depriving them of opportunity to file protest with said Commission; (4) that protest was filed September 13, 1917, by Kansas City and others intervening, and the Commission made investigation and made its

order of February 11, 1918, declaring the rates in the schedule of June 23, 1917, unreasonably high, and fixed rates in lieu thereof which were reasonable, and said order had not been appealed from; (5) that customers were coerced and compelled to take steam heat from defendant and pay for it under defendant's schedule of June 23, 1917, during the period from August 1, 1917, to March 1, 1917, by threats of defendant to cut off service if payment was not made promptly, and by being unable to procure steam heat from other sources; (6) that said acts of coercion were unlawful and willful, and thereby the customers of defendant suffered losses in the respective sums sued for; and (7) that thereby the defendant became indebted to the several customers, and now was indebted to plaintiffs for the respective sums so exacted.

The defenses pleaded by defendant in its answer were a denial that the rates fixed by the Commission were in lieu of the rates and charges made by the defendant, and allegations that the finding of the Commission of February 11, 1918, were null and void, being in contravention of various specified provisions of the Constitution of this State, in that it provided for the taking of the property of defendant without compensation for private use, without just compensation and without due process of law, and that said order of the Commission was of no binding effect upon defendant, being in violation of Article V, and of Section I of Article XIV of the Amendments, of the Constitution of the United States, in that the rates and charges prescribed in said order were unjust, and confiscatory of the property of defendant, took its property for both private and public use without just compensation, without due process of law, and denied to it the equal protection of the laws.

At the close of the evidence for plaintiffs the defendant offered its demurrer to the evidence, wherein it asked the court to declare upon the evidence the verdict must be for defendant. This was overruled by the court, and at the close of all the evidence the defendant offered

a peremptory instruction asking the court to declare that under the pleadings and the evidence, the plaintiffs cannot recover, and the verdict must be for the defendant. This instruction was overruled by the court, and afterward, on June 18, 1921, the court rendered judgment, finding the issues in favor of the plaintiffs and against the defendant. Two days later, on June 20, 1921, the defendant filed its request and motion that the court, in writing, state its conclusions of fact separately from its conclusions of law, and give certain instructions attached to the motion. The motion was overruled, and the instructions refused. On the following day, June 21, 1921, the defendant filed its motion for a new trial, and therein assigned as errors, among others, the overruling of said motion and request, and the refusal to give said instructions.

The motion and request and the instruction offered therewith, came too late, under numerous decisions of this court. [Shaffer v. Detie, 191 Mo. 377; Farmers Bank v. Barber, 198 Mo. 465; Hamilton v. Armstrong, 120 Mo. 597; Loewen v. Forsee, 137 Mo. 29.] The suit is one at law, and a jury was waived. The general finding of the court, made, without request for separate findings, and without declarations of law being asked before judgment was entered, cannot be disturbed on appeal if the court's finding is supported by any substantial evidence, and no error was committed in the admission or rejection of evidence, under frequent rulings of this court. [In re Lankford's Estate, 272 Mo. 1, where the cases are reviewed: Case v. Sipes, 280 Mo. 110; Wiley v. Harlow, 274 Mo. 170.]

Under the provisions of Section 10516, Revised Statutes 1919, all the provisions of the Public Service Law, relating to utilities so far as the same shall be practically, legally or necessarily applicable to heating companies, are made applicable to heating companies. The schedule of rates filed by defendant on June 23, 1917, was filed under the provisions of Section 10497, and other cognate sections dealing with the subject of filing schedules

303 Mo. Sup.—16.

of rates by utility companies. The filing of the schedule was notice to the Commission. It is not contended here by respondent that the schedule filed June 23, 1917, and going into effect on August 1, 1917, was not filed in conformity with the provisions of the act. The fact that no notice of it was given directly by appellant to the consumers is referred to here, rather by way of explanation of the reason why the consumers did not sooner protest, than otherwise; but, the evidence tends strongly to show that the Commission did promptly mail a notice of the filing of this schedule to the city counselor of Kansas City. That schedule became effective on August 1, 1917 —became the lawful rate—until set aside by an order of the Commission, and could then be set aside only after a hearing.

The plaintiff's case is grounded upon the claim that those rates were excessively high and unjust, and therefore unlawful. Reduced to its simplest terms the determination of the case here depends upon whether that claim is supported by any substantial evidence. In support of this respondent introduced in evidence the finding and order of the Commission made February 11, 1918, and hereinbefore mentioned. In making its order in that investigation, Commission Case No. 1353, the Commission did not allocate nor attempt to allocate or separate the values and operating expenses of defendant company between the uses for heating and electricity, and expressed an unwillingness to do so "without further investigation." The Commission, however, found that the heating rates under the defendant's schedule in effect from August 1, 1917, to March 1, 1918, were excessive, and established a lower schedule, which was yet higher than the one in effect prior to August 1, 1917. It is the contention of plaintiffs that this finding of the Commission is conclusive in this collateral proceeding, under the provision of Section 10526, Revised Statutes 1919, and the plaintiffs introduced no other evidence as to the alleged unreasonableness of the rates charged between August 1, 1917, and March 1, 1918.

The defendant introduced in evidence the report of the Commission, in Commission Case No. 1615, reported in 8 P. S. C. Rep. pages 293 to 301, which by stipulation is made part of the record here. That case was begun on June 11, 1918, upon complaint by the defendant company that its rates for both electric service and for steam heat were inadequate and confiscatory. Kansas City, and Mary B. Case and other consumers of steam heat, intervened. In that case the Commission made an allocation of values, and of revenues and operating expenses applicable respectively to the electric business, and the steam-heating business, and established schedules of rates thereunder. The report of the Commission was adopted September 27, 1919. The steam-heating rates established thereunder did not go into effect until December, 1919. The order displaced the schedule put into effect March 1, 1918, which was found to be "inadequate, unjust and unreasonably low." In this report the Commission made the following finding as to the heating department, 8 P. S. C. Rep. l. c. 292:

"The heating department failed to make operating expenses by $222,558.84 in 1917, by $198,186.68 during the first eight months in 1918, by $98,507.98 during the last four months of 1918; and by $296,694.87 during the calendar year of 1918. Attention is further directed to the fact that during none of these periods was the heating revenue sufficient to even meet the fuel expense alone." The Commission increased the rates for steam heating. The Commission estimated the mean percentage of increase thus made of these rates over those in force theretofore, under the order of February 11, 1918, at approximately 117 per cent. The Commission said l. c. 296: "Heretofore the steam-heating business has been carried at a loss, and this loss has been borne either by the light and power consumers or by the company. This is a distinctly inequitable condition which must be eliminated as soon as practicable."

The finding of the Public Service Commission in Commission Case No. 1353 cannot be held to be conclu-

sive as against the finding of the same body covering that period in Case No. 1615. No other conclusion can be reached from the findings made in Case 1615 than that the steam-heating department was operated at a loss during the very period involved in the case at bar. The action of the Commission in Case No. 1615 was reviewed, and was sustained by this court. [State ex rel. Case v. Public Serv. Comm., 298 Mo. 303.] The finding in the later case, made upon a manifestly fuller investigation, and specifically set forth, covering and including the period of the former investigation, and announced upon and after an allocation of operating expenses and revenues attributable to the two departments, wholly overcome and destroy the general findings made in the earlier case.

The order of February 11, 1918, fixed *prospectively* rates which plaintiffs say are the measure of what they should have been required to pay from August 1, 1917, to March 1, 1918, but the findings and order made afterwards, and upon actual test declare these very rates to be confiscatory. The order was not of the nature of an adjudication. The Commission has no judicial power. [Lusk v. Atkinson, 268 Mo. 109.] The order was one prospective in operation, and made without prejudice, as to what might thereafter be shown upon a fuller investigation and upon actual test.

On February 11, 1918, the Public Service Commission, as was its duty, doubtless "dipped into the future as far as human eye can see," but its conclusions, reached in the light of after events, in the strenuous period following and upon more complete investigation, ought to be given at least as much weight, as can be given to its opinion of the future. Taking the record of its findings and orders together, there is no substantial evidence in this case that the rates put into effect, March 1, 1918, were reasonable and just and not confiscatory, but the contrary; and there is no substantial evidence that the rates which the consumers paid from August 1, 1917, to March 1, 1918, were excessive and unjust, for on that the sub-

sequent finding of the Commission also is to the contrary. In this view of the matter there is no occasion to discuss any question of constitutional limitation upon the power of the Legislature in enacting Section 10526.

Going beyond the evidence as found in the reported action of the Public Service Commission, it appears that the defendant introduced evidence to the effect that during the specific period here involved, the heating department was operated at a loss. It is given in the language of a witness as follows: "The result of the operation for the seven months beginning August 1, 1917, and ending February 28, 1918, was a loss to the company of $83,804.25, without taking into consideration return on investment." The plaintiff offered no counter-evidence. There was also evidence offered as to the proper valuation of the property belonging to the heating department. Discussion of this as a basis for a return is unnecessary, because there is no claim that during the period involved there was any return.

The controlling issue in this case is settled by the decision of this court in Hackworth v. Mo. Southern Railroad Co., 286 Mo. 282. That was a suit wherein it was sought to recover freight charges paid in excess of those fixed by a statute (Sec. 3241, R. S. 1909). The defense was that the rates fixed were confiscatory, and violative of stated provisions of the State Constitution and of the Federal Constitution. Stating the rule as to the presumption to be indulged, and as to the applicable evidence, GRAVES, J., said, l. c. 293:

"It is presumed to be non-confiscatory, until its confiscatory character is made to appear. Its confiscatory character is made to appear (1) by the fact that the previous rate (likewise presumed to be reasonable) was much higher, (2) by the direct evidence of a railroad expert, who according to well-established railroad rules, made the specific calculations set out in the statement, and (3) by the later rulings of the Public Service Commission."

In the case at bar the later rulings of the Public Service Commission show that the rates which the plaintiffs claim were reasonable, and all they lawfully could have been required to pay, were confiscatory, and show that the rates which they actually did pay were so low as to be confiscatory of the property of the defendant, and the oral and independent testimony not contradicted, nor seriously controverted here, shows the same thing. The hand which made the sole evidence upon which plaintiffs rely has destroyed utterly the substance of that evidence. Further illustrative of the essential question in this case, in addition to the authorities cited in the Hackworth Case, is the more recent decision in Vandalia Railroad Co. v. Schnull, 255 U. S. 113.

The rate paid by the consumers from August 1, 1917, to March 1, 1918, was lawful, having been filed, and going into effect, under the provisions of Sections 10497 and 10516, Revised Statutes 1919, and was further lawful in that it was neither unreasonable nor excessive as against the consumers, but was in fact unremunerative to the defendant company. Requiring the consumers, as continuing to take that service, to pay the rate in accordance with the applicable rule for monthly payments made by the Commission, was not coercion of the consumers under the circumstances, nor an exaction from them of anything which they are entitled to recover, and the judgment in favor of plaintiffs should be reversed. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.