DENNEY, AS DIRECTOR OF PUBLIC WORKS OF WASHINGTON, ET AL., *v.* PACIFIC TELEPHONE & TELEGRAPH COMPANY.

SAME *v.* HOME TELEPHONE & TELEGRAPH COMPANY.

APPEALS FROM UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON.

Nos. 150 and 151. Argued January 9, 1928.—Decided February 20, 1928.

1. In a suit by a public service corporation to enjoin enforcement of rates fixed by a state commission, the federal courts will ascertain the powers and duties of the commission and the effect of its orders upon a consideration of the local constitution and statutes and the construction placed upon them by the state courts. P. 101.

2. Under the Public Service Commission Law of Washington, an order of the state Department of Public Works approving, and ordering future observance of, telephone rates that are higher than the *maxima* fixed in franchises granted the company by local municipalities, has the effect of terminating those franchise provisions and not that of introducing such approved rates as new *maxima* into the franchise contracts. P. 101.

3. Therefore, the rates so approved, when found to be confiscatory, can not be enforced as contractual. P. 102.

12 F. (2d) 279, affirmed.

APPEALS from decrees of the District Court permanently enjoining, as confiscatory, the enforcement of telephone rates which had been adjudged sufficient and ordered enforced by the Department of Public Works of the State of Washington.

*Messrs. John H. Dunbar* and *Arthur Schramm*, with whom *Messrs. H. C. Brodie, Thomas J. L. Kennedy, J. M. Geraghty* and *Alex M. Winson* were on the brief, for appellants.

*Mr. Otto B. Rupp*, with whom *Messrs. H. D. Pillsbury, Frank T. Post* and *C. M. Bracelen* were on the brief, for appellees.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

It will be convenient to dispose of these causes by one opinion as was done in the court below. *Pacific Tel. & Tel. Co.* v. *Whitcomb, et al.*, 12 F. (2d) 279.

Appellees operate telephone plants in Seattle, Tacoma and Spokane, Washington, under local franchises which designated maximum permissible rates. These were granted prior to 1911, but after adoption of the present Constitution of the State.

The " Public Service Commission Law " of Washington, Ch. 117, Laws 1911 (Remington's Comp. Stat. 1922, Secs.

10349–10441), authorized a public service commission and directed that telephone rates, tolls, contracts and charges "shall be fair, just, reasonable and sufficient," etc. It further provided—

"Sec. 43. (Remington's Comp. Stat. 1922, Sec. 10379)— Nothing in this act shall be construed to prevent any telegraph company or telephone company from continuing to furnish the use of its line, equipment or service under any contract or contracts in force at the date this act takes effect or upon the taking effect of any schedule or schedules of rates subsequently filed with the commission, as herein provided, at the rates fixed in such contract or contracts: *Provided, however,* That the commission shall have power, in its discretion, to direct by order that such contract or contracts shall be terminated by the telephone company or telegraph company party thereto, and thereupon such contract or contracts shall be terminated by such telephone company or telegraph company as and when directed by such order."

"Sec. 55. (Remington's Comp. Stat. 1922, Sec. 10391)— Whenever the commission shall find, after a hearing had upon its own motion or upon complaint, that the rates, charges, tolls or rentals demanded, exacted, charged or collected by any telegraph company or telephone company . . . are unjust, unreasonable, unjustly discriminatory or unduly preferential, or in any wise in violation of law, or that such rates, charges, tolls or rentals are insufficient to yield reasonable compensation for the service rendered, the commission shall determine the just and reasonable rates, charges, tolls or rentals to be thereafter observed and in force, and fix the same by order as hereinafter provided. . . ."

Chapter 1, Laws of 1921, vested in the Department of Public Works powers theretofore entrusted to the Commission.

Control of the telephone systems owned by appellees was assumed by the Postmaster General, August 1, 1918, and retained for one year. He fixed rates for Seattle, Tacoma and Spokane higher than the maximum rates permitted by the original franchises.

The Act of July 11, 1919 (41 Stat. Ch. 10, p. 157) repealed the Act of July 16, 1918—which authorized Federal control of telephone systems—and directed that rates established by the Postmaster General should continue for four months after the termination of Federal control (July 31, 1919) unless sooner modified or changed by public authorities.

August 8, 1919, the Public Service Commission directed appellees to observe the rates established by the Postmaster General; and they continued so to do. January, 1922, the Department of Public Works by formal complaint challenged the reasonableness of these rates. In the Autumn of 1922 appellees filed schedules of proposed increased rates which were suspended. Extended hearings were had concerning the value of properties devoted to the service and the reasonableness of the rates proposed. The Department found and declared the value of the properties; also " that the existing rates are just, fair, reasonable and sufficient; that the proposed increased rates both toll and exchange, are unjust, unfair, unreasonable, and more than sufficient." And on March 31, 1923, it ordered " that the applications of respondents for increased rates be and the same are hereby denied. That the proposed increased rates in their entirety be and they are hereby permanently suspended; that the same shall not become effective, and existing rates shall remain in effect until the further order of the Department."

Shortly thereafter appellees began these proceedings in the United States District Court. They attacked the valuations by the Department and alleged that the rates designated by the order of March 31, 1923, were confisca-

tory.   The matter went to a master and was heard upon his report, etc.   The court approved the master's conclusions that the Department's valuations were too low and the prescribed rates were confiscatory.   It accordingly adjudged the challenged order void and without effect.

The causes are here by direct appeal.   The valuations approved by the court are not questioned; nor is it now claimed that the rates prescribed by the departmental order would yield adequate returns.   But it is said that these rates must be regarded as contractual franchise rates and therefore they cannot be confiscatory in a constitutional sense.

Appellants maintain that under the statutes of Washington when the Department terminates a franchise rate · and prescribes another the result is " simply to terminate one· rate and substitute therefor a new rate, and that, after such substitution has been made, there still continues a franchise contract between the company and the city, which cannot be again changed except by the discretion of the department, and that the refusal of the department to exercise that discretion raises no question of confiscation."   Here, it is asserted, the department merely refused to change existing approved rates which were higher than the maxima originally specified in the granted franchises.

The powers and duties of the Department of Public Works and the effect of its orders must be ascertained upon a consideration of the local constitution and statutes, and the construction placed upon them by the State courts.   *Georgia Ry. Co.* v. *Decatur,* 262 U. S. 432, 437. *Southern Iowa Electric Co.* v. *Chariton,* 255 U. S. 539.

The Public Service Law authorizes investigation of existing rates and expressly directs that whenever after a hearing they are found to be unjust or insufficient to yield reasonable compensation the Department shall determine what will be just and reasonable ones thereafter to be

observed and fix the same by order.   The order of March 31, 1923, in effect declared the rates then being observed just and sufficient to yield reasonable compensation.   It expressly commanded their future observance and was sufficient to terminate the provisions of the franchises as to maximum rates, within the purview of Section 55, *supra.*

The Department made its investigation and order without regard to the franchise rates and treated the questions presented as unaffected thereby.   It exercised the power and duty to fix reasonable and compensatory rates irrespective of any previous municipal action.   We must treat the result as a bona fide effort to comply with the local statute.   There is no adequate basis for the claim upon which appellants rely.   See *Puget Sound Traction Co.* v. *Reynolds,* 244 U. S. 574, 578.

Much consideration was given to the Public Service Law by the Supreme Court in *State ex rel. Spokane* v. *Kuykendall,* 119 Wash. 107, 111 (1920).   There a gas company operating in Spokane under a franchise which prescribed maximum rates asked for increased rates.   The Commission disapproved the proposed schedule but permitted the company to charge rates declared to be just, reasonable and sufficient.   These exceeded the ones theretofore charged and were above the maximum permitted by franchise.   The Court said:

". . . By the act of 1911 (Laws of 1911, p. 561, § 34) the terms of a franchise contract like the one in question here are binding upon the parties until the department of public works (heretofore the public service commission) has made an order directing a departure therefrom; and, without question, the department has the right and power to order a departure.   *State ex rel. Ellertsen* v. *Home Tel. & Tel. Co.,* 102 Wash. 196, 172 Pac. 899. In the case of *State ex rel. Webster* v. *Superior Court,* 67 Wash. 37, it was decided that the public service com-

mission law placed the entire subject of rate regulation
under the control of the commission, that no contract
between a city representing the public and a public service
company would be allowed to interfere with that control,
and by way of application of the rule, it was decided in
that case to be the duty of the commission to the com-
pany to fix a rate which was sufficient (a rate that would
afford a fair interest return on the investment), in spite of
the franchise contract fixing rates which were too low.
That, in legal effect, is what has been done in the present
case."

Responding to an argument in behalf of the City, based
upon the proviso of Section 43, *supra,* the Court further
said:

" Therefrom it appears to be argued that the rates pro-
vided in the contract should continue until the commis-
sion makes an order specifically declaring and directing in
so many words that the contract shall be terminated.  We
may overlook the fact, if need be, that, upon the petition
of the city, the rates were reduced in 1913, and that in
1918 they were increased upon the application of the gas
company, and consider the franchise contract as having
been wholly undisturbed until the present time, and still
we would be compelled to determine, as we do determine,
that the present order of the department of public works
is just as effective as if, after fixing the rates, there had
been added therein the words 'and it is hereby directed
that the rates provided in the franchise shall be and they
are hereby terminated,' or words of similar import.  That
is the legal effect of what was done, and the form or lan-
guage by which it was accomplished is not very material."

.In the same cause the Gas Company maintained that
the rates prescribed by the Commission's order were inade-
quate for its needs and unjust.  This matter was care-
fully considered upon the merits, but the opinion nowhere
suggests that the rates prescribed should be treated as if

specified in the franchise and obligatory upon the Company whether compensatory or no.

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration of this case.