# MARCONI WIRELESS TELEGRAPH COMPANY OF AMERICA *v.* SIMON.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 168. Argued January 29, 1918.—Decided March 4, 1918.

The Navy Department accepted respondent's proposal to furnish certain sets of wireless telegraph appliances, the bid having been based on the Department's specification describing the appliances desired and upon a sample submitted with the bid as the Department required. Before the contract was completed this suit was brought to restrain him from making or delivering, upon the ground that petitioner's patent rights would thereby be infringed. In the courts below a decree dismissing the bill was made and affirmed upon the ground that the infringement, whether direct or contributory intrinsically, was not unlawful, in view of the Act of June 25, 1910, c. 423, 36 Stat. 851. *Held,* following *Cramp & Sons Co.* v. *International Curtis Marine Turbine Co., ante,* 28: (1) That, if the making of the appliances would be *per se* an infringement, the Act of June 25, 1910, construed in that case, afforded no defense; but (2) if, as contended and not decided in the courts below, the appliances as called for were so far incomplete that their making and furnishing would at most contribute to infringement by the Government in adjusting and using them for essential governmental purposes, the acts complained of would not be illegal or subject to injunction, in view of the statute as construed in the case cited and in *Crozier* v. *Krupp,* 224 U. S. 290. *Held,* further, (3) that, the nature of the infringement, i. e., whether it was direct or contributory—having been erroneously treated as irrelevant and so not decided by the courts below, the case should be remanded to the District Court for consideration and determination of the rights of the parties in the light of this court's construction of the statute, not overlooking petitioner's contentions that making the appliances for the Government before the contract was completed, and making them for persons other than the Government, would constitute direct infringements.

231 Fed. Rep. 1021, reversed.

THE case is stated in the opinion.

*Mr. L. F. H. Betts* and *Mr. John W. Griggs* for petitioner:

Prior to the Act of 1910, a patentee had a remedy in the Court of Claims by a suit against the United States for its lawful use of an invention, and a remedy in the Court of Claims or District Courts where his patented rights were taken under the exercise of the power of eminent domain. By a tortious or unlawful use of an invention, the United States does not acknowledge or concede that the patentee is entitled to the exclusive rights granted by a patent, or that the United States has appropriated or used any such rights. In fact, any such use of his exclusive rights is in effect a denial of the existence of such rights; or, at least, such use is treated by the United States as the exercise of its own rights. Consequently the patentee could not then recover upon the theory of a taking under the exercise of the right of eminent domain—which does not involve the commission of a tort—for which the law would imply a promise to pay reasonable compensation. But if the prerequisites to the taking of patent rights under eminent domain existed, the patentee could—in a suit in the Court of Claims or the District Court—recover compensation prior to the Act of 1910, on an implied promise to pay. *Hollister* v. *Benedict*, 113 U. S. 59, 67; *Brooks* v. *United States*, 39 Ct. Clms. 494; *Bethlehem Steel Co.* v. *United States*, 42 Ct. Clms. 365; *United States* v. *Russell*, 13 Wall. 623, 626; *United States* v. *Great Falls Mfg. Co.*, 112 U. S. 645; *United States* v. *Lynah*, 188 U. S. 445, 463 *et seq.*

Prior to the act, a patentee had a remedy by an infringement suit against officers of the United States for personal profits and damages. Although it was held that officers could not be enjoined from the infringement when acting in their official capacity, where the infringement was being conducted at government plants or the infringing device was in the possession and use of the United States, yet these officers were liable for the infringement and to

account for such profits as they personally made and to pay such damages as they personally caused. *Cammeyer* v. *Newton*, 94 U. S. 225; *James* v. *Campbell*, 104 U. S. 356; *Belknap* v. *Schild*, 161 U. S. 10; *Forehand* v. *Porter*, 15 Fed. Rep. 256; *Head* v. *Porter*, 48 Fed. Rep. 481, 488, 489. These suits in equity, brought against officers of the United States for infringement of a patent, were not dismissed for lack of jurisdiction, but the court assumed jurisdiction and decided each case on its merits.

Prior to the act, a patentee had a remedy in equity for an injunction and accounting for infringement against vendors or contractors with the United States, but no remedy against the United States for the use by the United States without license or lawful right, *i. e.*, a tort or infringement of a patent.

The Act of 1910 is an enlarging and remedial statute by which the United States simply consents to be sued in tort for its infringement of certain patents. If it be held that the act gives the Government the power of appropriating patent licenses by virtue of eminent domain, the rights of owners of patents are further restricted, because one effect of the act then is that in all cases of suits against the Government for use of patented inventions, where no element of contract is present, the Government may attack the validity of the patent. This was not the case before the act, for patentees then had remedies against the Government in case of a taking under the power of eminent domain and such cases involved necessarily, to prevent their being actions for tort, the recognition of the patentee's rights. It seems clear that the act should be construed to apply only to cases of infringement by the Government as distinguished from cases of a taking under the power of eminent domain; and should not be construed to deprive this petitioner of its formerly existent right to an injunction against this respondent, and the recovery from him of damages and profits.

The District Court's contention sweeps away the distinction between the infringing private citizen and an infringing Government and its officers. It confuses the right of a patentee to enjoin such private infringer, and to recover compensation from him, even when acting with the Government, with the power in the chancellor to adjust his decree to what public necessity demands.

In the case at bar, the plaintiff had a right of action to recover damages and profits made by Simon as an independent manufacturer and seller to the Government, and also had an independent right of action, but no remedy, against the Government as a user of the infringing apparatus. *Birdsell* v. *Shaliol*, 112 U. S. 487; *Jennings* v. *Dolan*, 29 Fed. Rep. 861; *Daimler* v. *Conklin*, 170 Fed. Rep. 70. There being three distinct and independent rights, there are three distinct and independent remedies which a patentee has, to wit, the right to recover from the infringing manufacturer and vendee for profits and damages, and the distinct and independent right to recover against the user for damages and profits. It was on this latter principle that the courts, prior to the Act of 1910, took jurisdiction of a suit against an infringing contractor with the Government, and not because the Government had not consented to be sued. A contractor acting for his own profit and benefit has not the same relation to the Government as one of its officers or employees.

The District Court was in error in assuming that by calling for bids for wireless apparatus under the Navy specifications government officers appropriated a license under the patent. The specifications did not mention the invention of the patent in suit. The officers of the Navy might have been satisfied with unpatented apparatus or means. There is no dispute as to the power of the Government to exercise its inherent right of eminent domain over intangible patent rights. Congress, by the provisions (§ 120) of the National Defense Act, 39 Stat.

213, has practically provided for the exercise of that right in respect to manufactured munitions of war whether patented or not.

*Crozier* v. *Krupp*, 224 U. S. 290, decided that the Act of 1910 provided a remedy against the United States in tort for its direct infringement, but that its officers could not be enjoined from continuing such infringement.

The right to the injunction should have been sustained, notwithstanding the Act of 1910. The operation of the injunction, so far as the Government's interests were concerned, might have been suspended, if the facts warranted such suspension, but injunction could not be rightfully denied except in case of necessity or of immediate or impending danger to the Government. Even then, we submit, the relief should not have been denied unless the petitioner or its licensees were unable or unwilling to supply the necessary apparatus at a just and reasonable price, and, in any event, unless the petitioner was secured against loss by an indemnity bond from the respondent.

The act of the respondent in manufacturing the patented apparatus, before he had any contract with the United States and for his own benefit and profit, is a separate tort, independent of any subsequent sale to or later contract with the United States, and was sufficient basis to sustain the bill and for an order for an injunction. The respondent had no assurance when he infringed that he would secure the government contract.

The fact that the apparatus might be sold to others than the United States, or that the respondent might use it, was sufficient to justify an injunction.

*Mr. Walter H. Pumphrey* for respondent:

The sample set was designed and manufactured under the authority and at the request of the Navy Department, and in accordance with the Department's specifications, and use of the patent necessarily was involved in

complying with those specifications.   *Brooks* v. *United States*, 39 Ct. Clms. 494.

There was a failure of proof of direct infringement. Manifestly, there can be no argument of infringement based upon the manufacture of the apparatus which Simon supplied to the Department—with nothing more. Therefore, petitioner is driven into the position that the Navy Department, in installing Simon's apparatus, adds certain things to it, which result in producing a system embodying the alleged invention of the Marconi claims in issue and which, therefore, infringes these claims.   The manufacture of a separate element of a patented combination, unless proved to have been conducted for the purpose and with the intent of aiding infringement, is not in and of itself infringement.   *Saxe* v. *Hammond*, 1 Banning & Arden, 629; *Heaton Co.* v. *Eureka Co.*, 77 Fed. Rep. 288; *Thomson-Houston Co.* v. *Ohio Brass Works*, 80 Fed. Rep. 712; *Bullock Co.* v. *Westinghouse Co.*, 129 Fed. Rep. 110. Therefore, in order to sustain the petitioner's contention as to contributory infringement, this court must view the Federal Government and this respondent as conspiring together, or acting in concert, the former as principal and the latter as an accomplice, to commit an unlawful act. Such a view is not possible under the Act of June 25, 1910, and the decisions in *Crozier* v. *Krupp*, 224 U. S. 290, and *International Curtis Marine Turbine Co.* v. *Cramp & Sons*, 211 Fed. Rep. 124–152.   Under the act, as interpreted by this court, it is clear that the Federal Government had a lawful right to make and use patented inventions, subject to the obligation to make just compensation to the patent owner for the property so taken.   Whatever may have been the character or quality of the act of the government officer with whom Simon negotiated, the completion and use by the Government of the apparatus in question was clearly an adoption by the United States of the act of the officers when and as committed, and caused such act to

become, in virtue of the statute, a rightful appropriation, for which compensation is provided.

The facts admitted and established. conclusively show that the real defendant here is the United States. It was the Navy Department that decided upon and elected to use the apparatus, advertised and solicited bids for it, required each bidder to make and submit a sample set, designated and authorized the respondent, Simon, along with several others, to furnish certain parts of a wireless transmitting apparatus for examination and test, which parts are herein termed a sample set, added the essential elements necessary to make the incomplete and inoperative apparatus complete and operative for wireless transmission, and it was the Department's completion and use of the apparatus that brought it within the claims of the patent in suit, if it is so. The action should clearly have been brought against the Government in the Court of Claims. [Counsel went fully into the purpose of the Act of 1910, and its relation to the doctrine of eminent domain, and its supposed effect in creating a license in favor of the Government, bestowing much consideration upon the case of *Crozier* v. *Krupp*.]

Simon does not sell wireless telegraph apparatus to the Navy Department; he is merely a contractor, making and supplying it to the Department on its orders. He is, therefore, not a vendor of such apparatus. *Johnson Co.* v. *Union Co.*, 55 Fed. Rep. 488. Obviously, the license to the Government is unrestricted and protects those who do for the Government that which the Government has a right to do under the license. To hold that the license to the Government is a limited license to "use," in the narrow sense of the use of machines or apparatus, would defeat the very purpose this court, in *Crozier* v. *Krupp*, held the act was intended to serve, to wit, to avoid "interference with the right of the Government to make and use" inventions in the interest of the commonwealth.

Even if the word "use." be taken in the narrow sense, it is nevertheless well settled that the right to use an invention implies the right to make the same. The fact that the defendant may make a profit out of the making was not a violation of the petitioner's rights and the petitioner is not entitled to the profit of the manufacturer. The right to such profit passed with the license irrespective of the individual who might do the work.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

In the spring or early summer of 1915 the Navy Department submitted its call for proposals to furnish 25 wireless telegraph transmitting sets. The call contained a specification describing the apparatus desired and provided that no bid would be entertained unless the bidder in advance or at the time of his bid submitted a sample of the apparatus which he would furnish under his bid if accepted. Simon, the respondent, who had no manufacturing establishment, employed a manufacturer of electrical apparatus to make for him a wireless telegraph transmitting set and when it was made submitted it to the Navy Department in accordance with the call. He also submitted a bid to furnish the appliances called for conformably to the sample and his bid was accepted by the Navy Department in August, 1915. Before the contract, however, was formally completed, in September following, the Marconi Wireless Telegraph Company, the petitioner, as assignee of the Marconi patents on apparatus for wireless telegraphy, filed its bill against Simon seeking an injunction preventing him from making or delivering the apparatus described in his bid on the ground that his doing so would be an infringement of the rights secured by the Marconi patents. The complainant moved for a preliminary injunction in accordance with the prayer of the bill, supporting its motion by affidavits, and the

defendant made a counter motion to dismiss the bill, the motion not being in the record but the ground thereof being persuasively shown by an affidavit submitted in its support, as well as by the reasons given by the court when it came to pass upon the motion. The ground stated in the affidavit was as follows:

"That affiant, in supplying the United States Navy with wireless sets constructed in accordance with Navy Specifications in the present instance for use on submarines, understood that he would be free of any and all liability for profits and damages for alleged infringement of patents, in view of the law as established by many recent decisions of the United States Courts holding that the Government, in the exercise of the right of eminent domain, may impose a license on any patent, the subject-matter of which it elects to use, and if the apparatus supplied by affiant to the Navy comes within the claims of the patent in suit, affiant has only assisted the Government, a licensee, in carrying out its license."

On the hearing of the motions there was contention as to whether the transmitting sets furnished by Simon were merely an indirect or contributory infringement of the Marconi patents because they were not complete and could not become so until they were adjusted for use and used by the Navy Department, or whether they were so complete without reference to such subsequent adjustment and use as to be a direct infringement. In passing at the same time upon the motion for injunction and the motion to dismiss the bill, the court, not doubting that the bill and the affidavits supporting the motion for an injunction established that the making and furnishing of the apparatus by Simon in an abstract sense infringed the Marconi patents either directly or indirectly by contribution, did not find it necessary to determine which one of the two characters of infringement had resulted because it concluded that such determination in the con-

crete was wholly irrelevant, as, under the view taken of the case, in any aspect there was no unlawful infringement. This conclusion was reached by considering the Act of June 25, 1910, c. 423, 36 Stat. 851, in connection with the decision in *Crozier* v. *Krupp,* 224 U. S. 290, and by holding that from such considerations it resulted that there existed in favor of the United States a general license to use patent rights when necessary for its governmental purposes and that Simon, as a contractor or one proposing to contract with the United States, could avail himself of the license right in favor of the United States and therefore was entitled to make and deliver the articles in question for the United States although if such license had not existed, the doing so would be either a direct or contributory infringement. The order as to both the injunction and the motion to dismiss were as follows:

"No injunction will issue. The motion to dismiss is granted, unless plaintiff elects in twenty days to plead over, and allege infringements not arising from governmental contracts. If such election is made, defendant to answer in twenty days after amended bill filed." (227 Fed. Rep. 906.)

The complainant having refused to make the election and to amend, a decree of dismissal was subsequently entered which was reviewed by the court below. That court, while it affirmed upon the theory of the license resulting from the Act of 1910 in accordance with the views which had been expressed by the trial court, also treated the act of Simon as either an infringement *per se* or a contribution to the infringement, if any, resulting from the acts of the United States, and did not distinguish between them doubtless because of a belief that under the construction given to the Act of 1910 both were negligible and afforded no ground for complaint. (231 Fed. Rep. 1021.) By virtue of the allowance of a writ of certiorari the case is now before us.

In view of the construction which we have given the
Act of 1910 in the case of *William Cramp & Sons Co.* v.
*International Curtis Marine Turbine Co.*, just decided,
*ante*, 28, it is apparent that both the courts below erred,
since the significance which they gave to the statute, and
upon which their conclusions were based, we have held
in the case stated to be without foundation. It would
hence follow, looking at this case from a generic point of
view, that our duty would be to reverse the action of both
courts below and to decide the controversy on the merits
in the light of the construction of the statute which we
have announced. But we are of opinion that under the
case as made by the record the duty of applying to the
issues the true meaning of the statute cannot with safety
or with due regard to the rights of the parties be now per-
formed, because of the failure of the courts below (a fail-
ure obviously resulting from the mistaken view they took
of the statute) to determine whether the acts of Simon in
furnishing the wireless apparatus amounted to an intrin-
sic or *per se* infringement, or only constituted contribu-
tions to the infringement, if any, resulting from the ad-
justment and use of the apparatus by the United States
for its essential governmental purposes. We are compelled
to this conclusion because, if the making of the parts was
in and of itself an infringement, it is clear under the rul-
ing which we have just made in the *Cramp Case* that
Simon was not protected by the supposition of a license
resulting from the Act of 1910 and that his acts were none
the less wrongful because committed in the course of the
performance of a contract with the United States. And if,
on the other hand, they were only contributions to an in-
fringement resulting from the acts of the United States,
it is equally clear that, in view of the provisions of the
Act of 1910 as interpreted in the *Cramp Case* and as up-
held and applied in the *Crozier Case*, no illegal interfer-
ence with the rights of the patentee arose or could arise

from the mere furnishing to the Government of the United States of the parts which were not *per se* infringements, even although the use by the United States would infringe the patents.

It follows therefore that to finally decide the case would require us to determine whether or not the apparatus as furnished was a direct infringement or mere contribution. But to do this would call for the exercise on our part of a duty which it was the province of the court below to perform and which doubtless it would have performed but for the error into which it fell concerning the interpretation of the Act of 1910 and the application to the subject which was before it of the prior decision of this court in *Crozier* v. *Krupp, supra.* Under these circumstances, as we have clearly removed by our decision in the *Cramp Case* all reasons for misconception concerning the statute and have thus cleared the way for the discharge by the court below of its duty, we think the case before us comes directly within the spirit of the ruling in *Lutcher & Moore Lumber Co.* v. *Knight,* 217 U. S. 257; *United States* v. *Rimer,* 220 U. S. 547; *William Cramp & Sons Co.* v. *International Curtis Marine Turbine Co.,* 228 U. S. 645; *Brown* v. *Fletcher,* 237 U. S. 583. We do not overlook, in saying this, contentions advanced in argument that, as the devices may have been made by Simon not only for the Government but for other persons, and even those furnished the Government were made before the contract with the Navy Department was completed, therefore his act in making them was a direct infringement. We do not, however, stop to dispose of them, since we are of opinion that under the state of the record we ought not to do so but should leave them also to be considered for what they are worth by the court below, if duly presented and relied upon, when it comes hereafter to consider the controversy.

Our order therefore will be one reversing the decrees of

both courts below and remanding to the District Court
to the end that in the light of the construction which we
have given the Act of 1910 the rights of the parties may
be considered and determined.

*Reversed and remanded.*

MR. JUSTICE McKENNA dissents.