RAILROAD COMMISSION OF CALIFORNIA ET AL. *v.* LOS ANGELES RAILWAY CORPORATION.

No. 60. Argued October 22, 1929.—Decided December 2, 1929.

*Mr. Arthur T. George,* with whom *Messrs. Ira H. Rowell* and *Roderick B. Cassidy* were on the brief, for the Railroad Commission of California.

148

*Mr. Frederick von Schrader,* Deputy City Attorney, with whom *Messrs. Erwin P. Werner,* City Attorney, and *Joseph T. Watson,* Deputy City Attorney, were on the brief, for the City of Los Angeles.

*Mr. Woodward M. Taylor,* with whom *Messrs. S. M. Haskins, Paul R. Watkins,* and *Herbert F. Sturdy* were on the brief, for appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Appellee operates a street railway system and motor buses for the transportation of passengers in the city of Los Angeles and in other parts of the county of Los Angeles. Its cars are operated on tracks laid in the streets under authority of 102 franchises granted from time to time since 1886. A few were obtained from the county; the others were granted by the city.

Seventy-three granted between November 28, 1890, and October 21, 1918, covering 113.41 miles, provide that " the rate of fare . . . shall not exceed five cents."

Eighteen granted between March 2, 1920, and January 21, 1928, covering 12.33 miles, provide that " the rate of fare . . . shall not be more than five cents . . . except upon a showing before a competent authority having jurisdiction over rates of fare that such greater charge is justified."

The remaining eleven, covering 10.5 miles, were granted at various times from 1886 to 1923; none of them provides that the fare shall not exceed five cents; but it may be assumed that under the provisions of the other ordinances a fare of five cents was made applicable over all lines. Prior to the decree in this case the basic fare charged was five cents.

Maintaining that its existing rates were not sufficient to yield a reasonable return, the company, November 16, 1926, applied to the commission for authority to increase

the basic fare to seven cents in cash or six and one-fourth cents in tokens to be furnished by the company, four for twenty-five cents. The commission, March 26, 1928, made a report and by an order denied the application. A petition for rehearing was denied.

June 22, 1928, the company brought this suit to have the rates and order adjudged confiscatory and for temporary and permanent injunctions restraining the commission from enforcing them. The city intervened as party defendant. The case came on for hearing before three judges on an application for temporary injunction. U. S. C., Tit. 28, § 380. Affidavits were submitted, a transcript of all the evidence before the commission was received and the parties stipulated that thereon the case should be finally determined on the merits. The court found that the rates will not permit the company to earn a reasonable return and are confiscatory; and by its decree permanently enjoined the commission from enforcing them.

The sole controversy is whether the company is bound by contract with the city to continue to serve for the fares specified in the franchises—it being conceded that the finding below respecting the inadequacy of the five cent fare is sustained by the evidence. Appellants contend that at all times the city had power to establish rates by agreement and that the franchise provisions constitute binding contracts that are still in force. On the other hand the company maintains that the State never so empowered the city; and it insists that, if the power was given and any such contracts were made, they have been abrogated.

1. It is possible for a State to authorize a municipal corporation by agreement to establish public service rates and thereby to suspend for a term of years not grossly excessive the exertion of governmental power by legislative action to fix just compensation to be paid for service

furnished by public utilities. *Detroit* v. *Detroit Citizens' R. Co.*, 184 U. S. 368, 382. *Vicksburg* v. *Vicksburg Water Works Co.*, 206 U. S. 496, 508, 515. *Public Service Co.* v. *St. Cloud*, 265 U. S. 352, 355. And where a city, empowered by the State so to do, makes a contract with a public utility fixing the amounts to be paid for its service, the latter may not be required to serve for less even if the specified rates are unreasonably high. *Detroit* v. *Detroit Citizens' R. Co., supra*, 389. And, in such case, the courts may not relieve the utility from its obligation to serve at the agreed rates however inadequate they may prove to be. *Public Service Co.* v. *St. Cloud, supra.*

This court is bound by the decisions of the highest courts of the States as to the powers of their municipalities. *Georgia Ry. Co.* v. *Decatur*, 262 U. S. 432, 438. Our attention has not been called to any California decision, and we think there is none, which decides that the state legislature has empowered Los Angeles to establish rates by contract. This Court is therefore required to construe the state laws on which appellants rely. As it is in the public interest that all doubts be resolved in favor of the right of the State from time to time to prescribe rates, a grant of authority to surrender the power is not to be inferred in the absence of a plain expression of purpose to that end. The delegation of authority to give up or suspend the power of rate regulation will not be found more readily than would an intention on the part of the State to authorize the bargaining away of its power to tax. *Providence Bank* v. *Billings*, 4 Pet. 514, 561. *Railroad Commission Cases*, 116 U. S. 307, 325. *Freeport Water Co.* v. *Freeport*, 180 U. S. 587, 599. *Stanislaus County* v. *San Joaquin C. & I. Co.*, 192 U. S. 201, 210. *Puget Sound Traction Co.* v. *Reynolds*, 244 U. S. 574, 579.

This court applied the established rule in *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 265. That com-

pany's franchise was granted under the Broughton Franchise Act, which provided that every such franchise " shall be granted upon the conditions in this act provided and not otherwise." The city charter gave power to its council to fix charges for telephone service. The franchise stated that the rates should not exceed specified amounts. An ordinance prescribing lower rates was passed. The company brought suit for injunction against its enforcement on the ground that the ordinance violated the contract clause of the Constitution of the United States. The city insisted that it had not been empowered by the State to make such a contract, and this court upheld its contention. It said (p. 273): " The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. . . . The general powers of a municipality or of any other political subdivision of the State are not sufficient. Specific authority for that purpose is required." And, dealing with the charter provision there relied on by the company, the court said (p. 274): " The charter gave to the council the power ' by ordinance . . .. to regulate telephone service and the use of telephones within the city, . . . and to fix and determine the charges for telephones and telephone service and connections.' This is an ample authority to exercise the governmental power . . . but entirely unfitted to describe the authority to contract. It authorizes command, but not agreement."

Section 470 of the Civil Code (March 21, 1872) cited by appellants merely regulates procedure. Section 497 authorizes political subdivisions to grant authority for the laying of railroads in streets " under such restrictions and limitations " as they may provide. Stats. 1891, p. 12. This is too general. The clause in § 501 (Stats. 1903, p. 172) providing that the rate of fare in municipalities

of the first class "must not exceed five cents " does not relate to the power to contract, and plainly has no application here because Los Angeles never belonged to that class.

Section 1 of the Broughton Franchise Act [1] provides that franchises " shall be granted upon the conditions in this Act provided and not otherwise." The Act requires the sale of such franchises upon advertisement stating the character of the franchise or privilege proposed to be granted, but it nowhere expressly empowers the city to establish rates by contract. This court in the *Home Telephone Company* case dealt with the quoted provision. It said (p. 275): " Here is an emphatic caution against reading into the act any conditions which are not clearly expressed in the act itself. . . . It cannot be supposed that the legislature intended that so significant and important an authority as that of contracting away a power of regulation conferred by the charter should be inferred from the act in the absence of a grant in express words. But there is no such grant." And, so far as concerns the matter under consideration, the Act was not expanded by the amendment of June 8, 1915. It authorizes grantors of such franchises to impose such additional terms and con-

---

[1] Its first sentence, as originally enacted, read: " Every franchise or privilege to . . . construct or operate railroads along or upon any public street or highway, or to exercise any other privilege whatever hereafter proposed to be granted by the . . . governing or legislative body of any . . . city . . . shall be granted upon the conditions in this Act provided, and not otherwise." Stats. 1893, p. 288. The Act was amended in 1897 (Stats. 1897, pp. 135, 177); re-enacted in 1901 (Stats. 1901, p. 265) and 1905 (Stats. 1905, p. 777) and amended in 1909. Stats. 1909, p. 125. The first sentence has remained substantially the same. The amendment of June 8, 1915 (Stats. 1915, p. 1300) inserted immediately after this sentence: "The grantor may, however, in such franchise impose such other and additional terms and conditions not in conflict herewith, whether governmental or contractual in character, as in the judgment of the legislative body thereof are to the public interest."

ditions "whether governmental or contractual in character" as in their judgment are in the public interest. This general language does not measure up to the rule earlier invoked here by Los Angeles and applied by this court in the *Home Telephone Company* case.

The appellants invoke provisions of the city charter which are printed in the margin.[2] But it requires ɲo discussion to show that they are not sufficient to empower the city by contract to establish rates. In support of their claim, they cite *Columbus R. & P. Co.* v. *Columbus,* 249 U. S. 399; *Opelika* v. *Opelika Sewer Co.,* 265 U. S. 215; *Public Service Co.* v. *St. Cloud, supra,* and *Southern Utilities Co.* v. *Palatka,* 268 U. S. 232. But the *Columbus* case did not involve, and this Court did not there decide, the question of power. See p. 407 and 194 U. S. at pp. 532, 534. And in the other cases, we followed the decisions of the courts of the respective States.

---

[2]Art. I, § 2(25) (February 16, 1905) Stats. 1905, p. 994, providing that no franchise for use of public streets should be granted by the city except by a specified vote nor for a term of more than 21 years and that "Every grant . . . shall make adequate provision by way of forfeiture . . . or otherwise to secure efficiency of public service at reasonable rates and the maintenance of the property in good order throughout the term of the grant."

Art. I, § 2(30) (March 25, 1911) Stats. 1911, p. 2063: "The city . . . shall have the right and power: . . . to fix and determine the rates . . . for . . . the conveyance of passengers . . . by means of street railway cars. . . . To regulate, subject to the provisions of the constitution of the State of California, the construction and operation of . . . street railways. . . ."

Art. I, § 2(40), being § 2(25), *supra,* (as amended April 7, 1913) Stats. 1913, p. 1633: "The city . . . shall have the right and power: To grant franchises, . . . for furnishing . . . transportation . . . or any other public service; to prescribe the terms and conditions of any such grant, and to prescribe by ordinance . . . the method of procedure for making such grants; . . ."

Appellants have failed to sustain their contention that the city was empowered to make such rate contracts.

2. But assuming that the fares were established by the franchise contracts we are of opinion that such contracts have been abrogated. The State had power upon the company's application, through its commission or otherwise, to terminate them. *Pawhuska* v. *Pawhuska Oil & Gas Co.,* 250 U. S. 394. *Trenton* v. *New Jersey,* 262 U. S. 182, 186. *Henderson Water Co.* v. *Corporation Commission,* 269 U. S. 278. *Denney* v. *Pacific Tel. Co.,* 276 U. S. 97.

November 30, 1918, the company applied to have the commission investigate its service and financial condition and for an order authorizing it to " so operate its system and change its rates that the income will be sufficient to pay the costs of the service." May 31, 1921, the commission found that the existing fares would not permit the company to collect enough to enable it to provide adequate service. See P. U. R. 1922A, 66, 90. And it made an order permitting a small increase. The company did not accept it, but applied for a rehearing. After several postponements the case was stricken from the calendar, and some years later the company asked that its application be dismissed. The commission, October 18, 1926, granted the company's request and also revoked the order.

Shortly thereafter the company applied for a basic fare of seven cents in cash or six and one-quarter cents in tokens. The fares so proposed were substantially higher than those which were not accepted by the company. Again the commission made extensive investigations. And March 26, 1928, it filed a report which contained findings as to the value of the property, operating rev-enues, operating expenses including cost of depreciation and taxes, amount available for return, average net income for five years ending with 1926, stated that the cost of operation might be reduced, and concluded that by reason of such facts the rates of fare charged by the com-

pany were not unreasonable and that the rates proposed would be unjust and unreasonable. And the commission made an order denying the company's application.

There is no decision in the courts of the State as to the effect of the proceedings before and action taken by the commission, and therefore we are required to construe the applicable provisions of the local constitution and statutes. *Denney* v. *Pacific Tel. Co., supra,* 101. Under the state constitution, Art. XII, § 23, as amended November 3, 1914, and the Public Utilities Act of April 23, 1915, the commission has exclusive power to regulate rates. And § 27 of the Act [3] gave to street railway companies the right to charge more than five cents upon showing before the commission that the higher charge is justified. No distinction is made between rates established by franchise contracts and those otherwise fixed. Fares may not be changed without approval of the commission. The policy of the State is that all rates shall be just and reasonable (§ 15) and the commission is directed, whenever after hearing had upon its own motion or upon complaint it shall find that rates are unjust or insufficient, to determine the just and reasonable rates thereafter to be observed. § 32(a).[4] The language used

---

[3] Section 27 declares that fares of more than five cents shall not be charged on street railroads " except upon a showing before the commission that such greater-charge is justified; provided, that until the decision of the commission upon such showing, a street . . . railroad . . . may continue to . . . receive the fare lawfully in effect on November 3, 1914. Stats. 1915, p. 131.

[4] Section 32 (a): " Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates . . . collected by any public utility . . . are unjust, unreasonable, discriminatory or preferential, or in anywise in violation of any provision of law' or that such rates . . . are insufficient, the commission shall determine the just, reasonable or sufficient rates . . . to be thereafter observed and in force, and shall fix the same by order as hereinafter provided." Stats, 1915, p. 132.

in *Denney* v. *Pacific Tel. Co., supra,* p. 102, is pertinent here. " The Department made its investigation and order without regard to the franchise rates and treated the questions presented as unaffected thereby. It exercised the power and duty to fix reasonable and compensatory rates irrespective of any previous municipal action. We must treat the result as a bona fide effort to comply with the local statute."

The proceedings before the commission and its orders clearly show that it twice took jurisdiction to determine just and reasonable rates. Its order of May 31, 1921, by reason of the company's failure to put in the increased rates never became operative and finally was vacated. The report and order of March 26, 1928, found that existing rates were just and reasonable and in legal effect required the company to continue to observe them. The court below found the rates confiscatory, and appellants do not here question that finding.

*Decree affirmed.*

MR. JUSTICE MCREYNOLDS is of opinion that, as our finding that the city had no power to make rate contracts is sufficient to dispose of the case, it would be better not to take up the second point.

MR. JUSTICE BRANDEIS, dissenting.

The Railway claims that the Commission's refusal to authorize a fare higher than five cents confiscates its property. The City and the Commission do not insist here that the five-cent fare is compensatory; and they concede that, since 1915, the latter has had jurisdiction to authorize a higher fare. They defend solely on the ground that the Railway bound itself by contracts not to charge more; that these contract provisions are still in force, except as modified by the Act of 1915 empowering the Commission to authorize changes in the rate;

that an alleged error of the Commission in refusing authority to charge more can be corrected only by proceedings brought in the Supreme Court of the State to compel the Commission to do its duty; and that the lower court's finding that the rate is non-compensatory is, therefore, immaterial.

The District Court recognized that such contracts, if existing, would be a complete defense to this suit, *Columbus Ry. & Power Co.* v. *Columbus*, 249 U. S. 399; *Georgia Ry. & Power Co.* v. *Decatur*, 262 U. S. 432; *Opelika* v. *Opelika Sewer Co.*, 265 U. S. 215; *St. Cloud Public Service Co.* v. *St. Cloud*, 265 U. S. 352; *Southern Utilities Co.* v. *Palatka*, 268 U. S. 232; expressed a strong doubt whether the City ever had the power to contract concerning the rate of fare; and, declining to pass upon that question, granted the relief prayed for solely on the ground that any such contract right which existed had been abrogated.

The franchises under which the Railway is operating are confessedly contracts. The words used concerning the rate of fare are apt ones to express contractual obligations. The Railway contends, however, that the fare provisions were not intended to be contracts, and that, if they were so intended, they were not binding, because neither the City nor the County had the power to contract as to the rate of fare. It insists further that if the fare provisions were originally binding as contracts, they were abrogated in 1921 or 1928 by action of the Commission.

*First.* Most of the franchises were granted before the State had vested in the Commission power to regulate street railway rates or had expressly reserved to itself, otherwise, the power to change rates theretofore fixed by ordinance. This power of regulation was first expressly conferred upon the Commission in 1915, by amendments to §§ 13, 27 and 63 of the Public Utilities Act, Stats. 1915,

p. 115, made pursuant to an amendment of § 23 of Article XII of the California Constitution adopted November 3, 1914. These enactments did not purport to abrogate any existing contract. Nor did they purport to take from the City or from the County any power theretofore possessed to make a contract concerning the rate of fare. Their effect was merely to make any such contract, whether theretofore or thereafter entered into, subject to change by the Commission. Unless and until so changed a contractual fare fixed by franchise remains in full force. *Henderson Water Co.* v. *Corp. Comm.*, 269 U. S. 278, 281-2. Consequently, it is not here claimed that these enactments alone abrogated the alleged contracts as to rate of fare.

*Second.* The Railway contends, however, that the Commission abrogated the fare contracts by its action taken in 1921 pursuant to this legislation. The facts are these. In 1918, the Railway asked the Commission to make an investigation of its service and its financial condition and for an order enabling it to so operate its system that the income would be sufficient to pay the cost of the service. In that application the Railway expressly disclaimed any desire to increase its rate of fare, but about two years later, it made a supplemental application for leave to do so. On May 31, 1921, the Commission made a report in which it declared that " an increase in the fare in some form " should be granted; and that the Railway be authorized " to file with the Commission and put into effect within thirty (30) days from the date of this order a schedule of rates increasing the present basic 5-cent fare to 6 cents," ten tickets for 50 cents. 19 Cal. R. R. Comm. Op. 980, 1002. The Railway did not file a schedule of fares. Instead, it moved for a rehearing. That motion was promptly set down for hearing by the Commission, but was never heard. For the Railway asked first for an adjournment; then that its motion be stricken

from the calendar; and finally, that an order be entered setting aside the decision made and dismissing the entire proceeding, including the application for increase of fare. This request of the Railway was granted, the order of dismissal reciting that the authorization to increase the fare had "been suspended by virtue of the pendency of a petition for rehearing," as the statutes provided. Public Utility Act, § 66. Obviously this action taken in 1921 cannot be deemed an abrogation or modification of any existing fare provision of the franchises, unless it be held that mere entry by the Commission upon an enquiry as to the rate of fare, as commanded by the statute, has that effect. Reason and authority are to the contrary.

*Third.* Nor did the action taken by the Commission in 1928, in the proceedings now under review, abrogate any existing fare provision. There also the Commission took jurisdiction, as it was by the statute required to do. It refused to authorize a higher fare, because it concluded that for the past five years the Railway had been earning an average annual return of 7.1 per cent; that it was not being efficiently operated; that the management had failed to introduce certain economies previously recommended which would have increased its net earnings; and that for these reasons the existing five-cent fare was just and reasonable. The Commission may have erred in its judgment, but it is clear that it did not change the rate of fare. In *Georgia Ry. & Power Co.* v. *Decatur,* 262 U. S. 432, 439, it was held that the assumption of jurisdiction by the Commission to the extent of affirmatively ordering the continuance of existing transfer privileges did not effect an abrogation of an existing contract provision relating thereto, since such action did not conflict with the terms of the contract. Compare *Los Angeles* v. *Los Angeles City Water Co.,* 177 U. S. 558, 578–84; *Minneapolis* v. *Street Ry. Co.,* 215 U. S. 417, 435. In *Denney* v. *Pacific Telephone Co.,* 276 U. S. 97, the Commission had previ-

ously granted an increase in fare of which the Company had availed itself.

Assuming that the Railway was bound by contract to maintain a five-cent fare, it could be relieved from its obligation only by the Commission. Had the Commission authorized an increase in fare, it would still be questionable whether the contract would have been thereby abrogated or only modified by making the Railway's obligation less onerous. Surely, the Commission's refusal to grant any help, because in its opinion none is needed, cannot have the anomalous effect of entirely relieving the Railway of its obligation.

*Fourth.* If the District Court erred in holding that the action taken in 1921 or 1928 had the effect of abrogating any existing contract, there must be a determination whether such contracts did exist, in fact and law. It was assumed by the District Court and by counsel in this Court that if the City lacked the power to bind itself contractually by the fare provisions, the Railway could not be bound thereby. This conclusion is not commanded by logic or by the law of contracts. Lack of power in the municipality to bind itself is a factor to be considered in determining whether the parties intended to enter into a contract. But, if they did, the Railway's promise need not fail for lack of mutuality. The law does not require that a particular contractual obligation must be supported by a corresponding counter-obligation. It is conceded that the City possessed the power to enter into the franchise contract. The contention is merely that it could not surrender its power to regulate rates. But there is nothing in the fare provisions to indicate that the City attempted to do that. These provisions in terms bind only the Railway. The Railway unquestionably had power to agree to charge a fixed fare. The grant of the franchise is sufficient consideration, if so intended, for any number of contractual obligations which the Railway may

have chosen to assume. In *Southern Iowa Electric Co.* v. *Chariton,* 255 U. S. 539, a case coming from Iowa, it was held, following Iowa decisions, that since the city lacked power to bind itself, there was no contract. And there is a statement to that effect in *San Antonio* v. *San Antonio Public Service Co.,* 255 U. S. 547, 556. But in *Southern Utilities Co.* v. *Palatka,* 268 U. S. 232, 233, the question was expressly left open. Obviously, that is a matter of state law on which the decisions of this Court are not controlling.

*Fifth.* If it be true that the Railway is not bound by the fare provisions, unless the City had power to bind itself in that respect, it is necessary to determine whether the City had that power and whether the parties did in fact contract as to the rate of fare. Whether the City had the power is, of course, a question of state law. In California, the constitution and the statutes leave the question in doubt. Counsel agree that there is no decision in any court of the State directly in point. They reason from policy and analogy. In support of their several contentions they cite, in the aggregate, 30 decisions of the California courts, 15 statutes of the State, besides 3 provisions of its code and 7 provisions of its constitution. The decisions referred to occupy 308 pages of the official reports; the sections of the constitution, code and statutes, 173 pages. Moreover, the 102 franchises here involved were granted at many different times between 1886 and 1927. And during that long period, there have been amendments both of relevant statutes and of the constitution. The City or the County may have had the power to contract as to the rate of fare at one time and not at another. If it is held that the City or the County ever had the power to contract as to rate of fare, it will be necessary to examine the 102 franchises to see whether the power was exercised. It may then be that some of the franchises contain valid fare contracts, while others

do not. In that event, the relief to be granted will involve passing also on matters of detail.

In my opinion, these questions of statutory construction, and all matters of detail, should, in the first instance, be decided by the trial court. To that end, the judgment of the District Court should be vacated and the case remanded for further proceedings, without costs to either party in this Court. Pending the decision of the trial court an interlocutory injunction should issue. Compare *City of Hammond* v. *Schappi Bus Line,* 275 U. S. 164; *City of Hammond* v. *Farina Bus Line & Transportation Co.,* 275 U. S. 173; *Ohio Oil Co.* v. *Conway,* 279 U. S. 813. It is a serious task for us to construe and apply the written law of California. Compare *Gilchrist* v. *Interborough Rapid Transit Co.,* 279 U. S. 159, 207–209. To "one brought up within it, varying emphasis, tacit assumptions, unwritten practices, a thousand influences gained only from life, may give to the different parts wholly new values that logic and grammar never could have got from the books." *Diaz* v. *Gonzalez,* 261 U. S. 102, 106. This Court is not peculiarly fitted for that work. We may properly postpone the irksome burden of examining the many relevant state statutes and decisions until we shall have had the aid which would be afforded by a thorough consideration of them by the judges of the District Court, who are presumably more familiar with the law of California than we are. The practice is one frequently followed by this Court.[1]

---

[1] This course was pursued in the following, among other cases, in which a lower Federal court erroneously left undecided a question of local law or of its application, *Gainesville* v. *Brown-Crummer Co.,* 277 U. S. 54, 61, *Hammond* v. *Schappi Bus Line,* 275 U. S. 164, 169–72, *Hammond* v. *Farina Bus Line,* 275 U. S. 173, 174–5, *Wilson Cypress Co.* v. *Del Pozo,* 236 U. S. 635, 656–7; in the following cases in which the lower court erroneously left undetermined a question of fact, *Security Mortgage Co.* v. *Powers,* 278 U. S. 149, 159, *United*

In the case at bar, there are persuasive reasons for adopting the course suggested. The subject matter of this litigation is local to California. The parties are all citizens of that State and creatures of its legislature. Since the Railway denies that there ever was a valid contract governing the rate and asserts that if any such existed they have been abrogated, the contract clause of the Federal Constitution is not involved. The alleged existence of contracts concerning the rate of fare presents

States v. Magnolia Co., 276 U. S. 160, 164–5, United States v. Brims, 272 U. S. 549, 553, Gerdes v. Lustgarten, 266 U. S. 321, 327, Chastleton Corp. v. Sinclair, 264 U. S. 543, 548–9, Vitelli & Son v. United States, 250 U. S. 355, 359, Southern Pacific Co. v. Bogert, 250 U. S. 483, 494, 497, Union Pac. R. R. Co. v. Weld County, 247 U. S. 282, 287, Marconi Wireless Co. v. Simon, 246 U. S. 46, 57, Owensboro v. Owensboro Waterworks, 191 U. S. 358, 372, Chicago, Milwaukee &c. Ry. v. Tompkins, 176 U. S. 167, 180; in the following cases in which the Circuit Court of Appeals did not review the merits because of an erroneous view of the jurisdiction of the District Court, Guardian Savings Co. v. Road Dist., 267 U. S. 1, 7, Brown v. Fletcher, 237 U. S. 583, 586–8, cf. Louie v. United States, 254 U. S. 548, 551; in the following cases in which the Circuit Court of Appeals restricted its review because it erroneously regarded the action as one at law instead of a suit in equity, Twist v. Prairie Oil Co., 274 U. S. 684, 692, Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 245; in the following cases in which the Circuit Court of Appeals erroneously narrowed the scope of its review for other reasons, Krauss Bros. Co. v. Mellon, 276 U. S. 386, 394, National Brake Co. v. Christensen, 254 U. S. 425, 432; in the following cases in which the State court placed its decision on an erroneous view of federal law, and, therefore, did not consider the questions of local law involved, Chicago & N. W. Ry. v. Durham Co., 271 U. S 251, 257–8, Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 445–7, Ward v. Love County, 253 U. S. 17, 25. In all of these cases, this Court recognized its undoubted power to decide the matters erroneously left undetermined by the courts below; but it preferred to remand the cases for further proceedings, either on the ground that the determination of the undecided issues was too burdensome a task, or on the ground that those issues should more appropriately be decided, in the first instance, by the lower courts.

the fundamental issue of the case. Whether such contracts exist, or ever existed, depends wholly upon the construction to be given to laws of the State. Upon these questions, the decision of the Supreme Court of California would presumably have been accepted by this Court, if the case had come here on appeal from it. Compare *Georgia Ry. & Power Co.* v. *Decatur,* 262 U. S. 432, 438; *Appleby* v. *City of New York,* 271 U. S. 364, 380.

The constitutional claim of confiscation gave jurisdiction to the District Court. We may be required, therefore, to pass, at some time, upon these questions of state law. And we may do so now. But the special province of this Court is the Federal law. The construction and application of the Constitution of the United States and of the legislation of Congress is its most important function. In order to give adequate consideration to the adjudication of great issues of government, it must, so far as possible, lessen the burden incident to the disposition of cases, which come here for review.[2]

MR. JUSTICE HOLMES joins in this opinion.

MR. JUSTICE STONE, dissenting.

I agree with Mr. Justice Brandeis that this case should have been disposed of by remanding it to the district court of three judges for determination whether the railway company, under its 102 franchises, or any of them, is bound by contract to maintain a five-cent fare. That question is I think different from the one presented in *Home Telephone Co.* v. *Los Angeles,* 211 U. S. 265, and

---

[2] Compare " Distribution of Judicial Power between the United States and State Courts," by. Felix Frankfurter, XIII Cornell Law Quarterly, 499, 503; " The Business of the Supreme Court at October Term 1928,"· by Frankfurter and Landis, XLIII Harvard Law Review, 33, 53, 56, 59–62.

involved in *Detroit* v. *Detroit Citizens Railway Co.*, 184 U. S. 368; *Vicksburg* v. *Vicksburg Water Works Co.*, 206 U. S. 496, whether the city had the requisite legislative authority to bind itself not to reduce the rate of fare fixed by the franchise. Here concededly the power to regulate rates is reserved to the state commission and the question preliminary to the whole case is whether the railroad company has bound itself to serve for a five-cent fare. I know of no principle of the law of contracts, *qua* contracts, which would preclude its doing so, even though the city had no power to obligate itself to maintain any particular rate. It has not purported to exercise such power by so contracting. It had power to grant franchises and the grant of the franchise without more would be good consideration for the company's undertaking to maintain a five-cent fare. Williston on Contracts, §§ 13, 140.

The provision of the statute of April 7, 1913, enacted after the decision in *Home Telephone Co.* v. *Los Angeles, supra*, authorizing the city to grant franchises and "to prescribe the terms and conditions" of the grant, and that of the act of June 8, 1915, authorizing the grantor of the franchise to impose terms and conditions "whether governmental or contractual in character," to quote no others, would seem to permit the city to acquire by the mere grant of the franchise, without other obligation on its part, such contractual undertakings on the part of the railroad company as did not contravene the public interest.

If there be any public policy forbidding the company so to bind itself or forbidding the city to take advantage of the undertaking so given and acquired, it is one peculiar to local law, having its origin in local history and conditions, and so is peculiarly an appropriate subject for consideration, in the first instance, by the court of the district.

But as the Court, without dealing with this aspect of the matter, has held that the railway company is not so bound, it is unnecessary to decide that the state railroad commission's refusal to raise the rate would have been enough to abrogate the contract, if there had been one, and the practice of the Court not to pass on questions of constitutional or state law not necessary to a decision should, I think, be scrupulously observed. Even if necessary to decide the question, I would not be prepared to say that the refusal of the commission to fix a fare different from the contract rate would destroy the contract. By contracting for a five-cent fare, the railway company waived the protection of the due process clause of the Fourteenth Amendment. *Columbus Ry. Co.* v. *Columbus,* 249 U. S. 399; *Southern Iowa Electric Co.* v. *Chariton,* 255 U. S. 539, 542; *Paducah* v. *Paducah Ry. Co.,* 261 U. S. 267, 272; *Georgia Ry. Co.* v. *Decatur,* 262 U. S. 432, 438; *Henderson Water Co.* v. *Corporation Commission,* 269 U. S. 278, 281. Granting that the contract was subject to the power and duty of the commission to modify it by changing the rate, that power has not been exercised and the duty is one arising, not under the Constitution and laws of the United States, but is imposed by state statute, for breach of which a state remedy alone should be given. See *Henderson Water Co.* v. *Corporation Commission, supra,* 282 (compare *Corporation Commission* v. *Henderson Water Co.,* 190 N. C. 70).