GRABER, Circuit Judge,
concurring in part and dissenting in part:
Two groups of Plaintiffs[1] mount challenges to two restrictions that the people of California have placed on their initiative process: (1) the requirement that official proponents be electors, that is, individual voters; and (2) the requirement that each petition section list the name of at least one official proponent. I agree with the majority opinion that the case is properly before us, and I concur in Part III, which holds that the elector requirement passes constitutional muster. I write separately to dissent from Part IV. The majority opinion properly recognizes in Part III that the role of an official proponent of an initiative petition in California is like that of a legislator. But the majority fails to apply this analogy equally to Part IV. Following the analogy of official proponent as legislator to its logical end, the disclosure requirement survives any level of review.
The overarching question begins and ends with the role of the official proponent within the California lawmaking process. Although the California Constitution does not describe the full contours of the official proponent’s role, the California legislature has fleshed it out in a series of statutes.
Under the California Elections Code, an official proponent enjoys a special relationship to the initiative that continues long after the advocacy process is complete. See, e.g., Cal. Elee.Code §§ 9202, 9205, 9207. In particular, official proponents: (1) bear the obligation “to manage and supervise the process by which signatures for the initiative petition are obtained”; (2) “control the arguments in favor of an initiative measure,” including by serving as gatekeeper for all ballot arguments, providing arguments afforded priority status on the ballot, controlling all rebuttal ballot arguments, and retaining the ability to withdraw ballot arguments at any time; and (3) are allowed to intervene, both before and after the initiative is passed, in litigation affecting the initiated statute, and to appeal state court rulings adverse to the initiative’s validity. Perry v. Brown, 52 Cal.4th 1116, 134 Cal.Rptr.3d 499, 265 P.3d 1002, 1017-18 (2011). But see Hollingsworth v. Perry, — U.S. -, 133 S.Ct. 2652, 2662, 186 L.Ed.2d 768 (2013) (holding that the authority of the official proponent to intervene in court proceedings pertaining to an initiative is insufficient, without more, to create Article III standing). In addition to having special duties beyond those of ordinary supporters of an initiative, “the official proponents of an initiative measure are recognized as having a distinct role — involving both authority and responsibilities that differ from other supporters of the measure,” Perry, 134 Cal.Rptr.3d 499, 265 P.3d at 1017-18, and the California Supreme Court has equated the role of a proponent to that of an elected legislator to whom the people have delegated lawmaking power.[2] It is the distinct charac *697 ter of this role that informs the First Amendment analysis for both challenges.
The Individual Plaintiffs challenge a requirement of the California Elections Code that the text of the petitions disclose the name of at least one official proponent. The California Elections Code, as incorporated by the Chula Vista City Charter, requires an official proponent of a ballot initiative to provide a name and signature at three distinct points during the initiative process. First, at least one of the official proponents must provide a name and signature to the City Clerk on the Notice of Intent to Circulate Petition when the document is first filed. Cal. Elec.Code § 9202. Second, the Notice of Intent to Circulate Petition, containing the signature and name of at least one official proponent, must be published in a newspaper of general circulation within the city and county. Cal. Elec.Code §§ 9202, 9205. Finally, the California Elections Code mandates that each section of the petition bear a copy of the Notice of Intent to Circulate Petition, which would necessarily include the name and signature of any official proponent who signed the form initially. Id. § 9207.
The Individual Plaintiffs mount a facial challenge to only the final requirement, that each section of the petition bear a copy of the Notice of Intent to Circulate Petition. They contend that this content-based restriction, affecting the text of the petition, impermissibly chills core political speech by forcing speakers to disclose their identities at the point of contact with potential signatories. Because this disclosure is required at the point of contact with voters, the Individual Plaintiffs urge us to review the disclosure regime with strict scrutiny.
Anonymous political advocacy, such as the debate between “Publius” in the Federalist Papers and his detractors “Federal Farmer” and “Cato,” has played a fundamental role in the development of our constitutional framework. “Anonymity is a shield from the tyranny of the majority. It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation — and then-ideas from suppression — at the hand of an intolerant society.” McIntyre v. Ohio Elections Comm’n, 514 U.S. 334, 356, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) (citation omitted). It is perhaps because of this essential value that our free speech tradition has hesitated to allow a government to exclude speech from the marketplace of ideas merely because that speech does not disclose its source. See id. at 342-43, 115 S.Ct. 1511. But compelled disclosure is not a direct prohibition on speech. Doe v. Reed, 561 U.S. 186, 130 S.Ct. 2811, 2818, 177 L.Ed.2d 493 (2010); see also Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 366, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (holding that “disclosure requirements may burden the ability to speak, but they ... do not prevent anyone from speaking” (citation and internal quotation *698 marks omitted)). Striking a balance between those two points, the Supreme Court has applied “ ‘exacting scrutiny’ ” to disclosure regimes in the electoral context, which “requires a ‘substantial relation’ between the disclosure requirement and a ‘sufficiently important’ governmental interest.” Citizens United, 558 U.S. at 366-67, 130 S.Ct. 876 (quoting Buckley v. Valeo, 424 U.S. 1, 64, 66, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam)). Following Doe and Citizens United, I would apply exacting scrutiny to the disclosure regime.
The government maintains that the disclosure requirement is a reasonable regulation of the initiative process that serves two sufficiently important state interests: (1) to preserve the integrity of the initiative process; and (2) to inform signatories “as to who is formally proposing the legislation.” [3] Because I find the state’s interest in preserving the integrity of the electoral process sufficiently important, indeed compelling, and substantially related to a narrowly tailored disclosure regime, I would find the regime constitutional under any level of scrutiny.
The Supreme Court has consistently recognized that the government’s interest in preserving the integrity of the electoral process is sufficiently important to survive exacting scrutiny. Doe, 130 S.Ct. at 2819. “States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally.” Id. (internal quotation marks omitted). The government’s interest in preserving the integrity of elections is especially strong in the context of fraud, but the interest “is not limited to combating fraud” and “also extends more generally to promoting transparency and accountability in the electoral process, which the State argues is ‘essential to the proper functioning of a democracy.’ ” Id.
In the federal context, “[t]he public nature of federal lawmaking is constitutionally required.” Id. at 2834 (Scalia, J., dissenting) (quoting U.S. Const art. I, § 5, cl. 3: “ ‘Each House shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such Parts as may in their Judgment require Secre-ey[.]’”). The lawmaking process is kept transparent for good reason: Knowing the identities of lawmakers and their actions plays an important role in allowing the public to evaluate officials and hold them accountable. “In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation.” Buckley, 424 U.S. at 14-15, 96 S.Ct. 612.
Similarly, the local government has an “essential” interest in preserving an electoral process in which members of the California public who are considering whether to sign an initiative petition know for whom they are expressing support as the official proponent when they sign a petition — and to whom they will delegate certain lawmaking duties if the petition is successful. The government’s interest in supporting the integrity of the electoral process by providing the public with the identity of an official proponent is not directed solely at preventing fraud. The electoral process would be degraded if potential signers have no way of knowing whether their signatures are delegating *699 lawmaking duties to a desirable proponent for the initiative, who will present arguments on behalf of the initiative and defend the initiative in a manner with which the signers agree. As noted, in California official proponents play a central role, both during the lawmaking process and after their initiative is enacted. Perry, 134 Cal.Rptr.3d 499, 265 P.3d at 1017-18. An ineffective official proponent: (1) could fail to manage and supervise the initiative process; (2) could fail to file the petition with the state; (3) could make poor choices regarding arguments and statements for the ballot; (4) would receive priority status for even the weakest arguments on the ballot; (5) could fail to mount, or could withdraw from the ballot, the better arguments; and (6) could fail to defend the initiative in court proceedings. Id.
On issues of public importance, potential signers could face multiple initiatives on the same topic. In order to make an informed decision about which of the initiatives to support, potential signers would need to know the differences in content among the various initiatives. But the voters would also need to know the identities of the official proponents for each initiative so that the voters could evaluate how those official proponents would present the important public issue at hand. Because the official proponent serves an important role in the lawmaking process and is delegated duties in the lawmaking process far beyond that of an advocate, the government has an essential interest in preserving an electoral process that allows voters to know to whom they are delegating lawmaking power when signing a particular petition.
This “essential” interest clearly outweighs the minor actual burden, if any, on the official proponents who must disclose their identities. The role that these individuals wish to fill is itself a public legislative role that is akin to the role of an elected legislator. The voluntary undertaking of a California proponent’s role entails other duties (beyond the initial filing) that require disclosure of the official proponent’s identity, for example, monitoring the integrity of the petition-circulation process, crafting arguments for the ballot, and intervening in court proceedings. Other circuits have recognized that candidates for public office have no First Amendment interest in anonymity by virtue of their voluntary undertaking of a public role. See, e.g., Majors v. Abell, 317 F.3d 719, 722 (7th Cir.2003) (“[The plaintiffs] standing might be questioned on the ground that a candidate has no [free speech] interest in anonymity that the statute might protect; for there are no anonymous candidates.”). Similarly, the role sought by these individuals is one that necessarily requires public disclosure of identity. Even assuming that an official proponent has a First Amendment anonymity interest, the potential burden is negligible.
In a different context, the Supreme Court has expressed skepticism that an informational interest can sustain regimes that compel disclosure of the identity of an advocate at the point of contact with voters, or signatories in the initiative context. In Buckley v. American Constitutional Law Foundation, Inc. (‘ACLF”), 525 U.S. 182, 200, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999), the Court struck down a Colorado statute requiring every petition circulator to wear a badge bearing the circulator’s name, because the public’s informational interest in identifying the advocate was insufficiently important to justify chilling political speech and potentially to subject circulators to harassment at the apex of face-to-face political advocacy. Similarly, in McIntyre, the Supreme Court struck down an Ohio ban on handbills that failed to identify the name of the advocate, because the public’s informational interest in *700 knowing the identity of the advocate “means nothing more than the provision of additional information that may either buttress or undermine the argument in a document.” 514 U.S. at 348, 115 S.Ct. 1511. Beyond expressing concerns over fear of harassment that could chill political speech, the Court noted that disclosure of the advocates’ identity at the point of contact with voters could weaken the effectiveness of the speech: “[A]n advocate may believe her ideas will be more persuasive if her readers are unaware of her identity.” Id. at 342, 115 S.Ct. 1511; see also ACLU of Nev. v. Heller, 378 F.3d 979, 994 (9th Cir.2004) (“[F]ar from enhancing the reader’s evaluation of a message, identifying the publisher can interfere with that evaluation by requiring the introduction of potentially extraneous information at the very time the reader encounters the substance of the message.”).
We have adopted the Court’s skepticism of an informational interest in the identity of the advocate at the point of contact with voters. See Heller, 378 F.3d at 995 (holding that an informational interest in allowing the public to evaluate the advocacy document is not sufficiently important to sustain compelled disclosure of an advocate’s identity on the document itself); (WIN) Wash. Initiatives Now v. Rippie, 213 F.3d 1132, 1140 (9th Cir.2000) (holding that an informational interest is not sufficiently important to sustain compelled disclosure of advocates’ identities during the circulation period).
But this doctrine does not apply here for two reasons. First, the statute is directed toward the government’s interest in preserving the integrity of elections, an interest that the Supreme Court has recognized as sufficient to support mandated disclosure of identity. Doe, 130 S.Ct. at 2820. Second, the proponent of a California initiative is asking voters to allow her to serve an official public role and to allow her to act on the voters’ behalf in the legislative process, not just recounting an idea as an advocate, and a petition is an official legislative form, not a pamphlet or advocacy document. See Timmons v. Twin Cities Area New Party, 520 U.S. 351, 363, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997) (holding that the First Amendment does not provide “a right to use the ballot itself to send a particularized message”). Here, the disclosure regime seeks to disclose the identity not of an advocate, but of an individual who serves as an official proponent and representative of the signers in the lawmaking process — a role akin to a candidate for office and recognized explicitly as distinct from that of an advocate under California law. See Perry, 134 Cal.Rptr.3d 499, 265 P.3d at 1017-18 (holding that “the official proponents of an initiative measure are recognized as having a distinct role — involving both authority and responsibilities that differ from other supporters of the measure”). The government’s interest in alerting potential signatories to the official proponent’s identity, as a representative of the initiative, is markedly different than the interests at stake in McIntyre, Citizens United, and ACLF — that is, knowing the identity of a mere advocate in order to evaluate an argument.
The Individual Plaintiffs respond that the state’s interest is satisfied, or lessened, by two other required points of disclosure — at the points of application and publication in a newspaper of general circulation. Cal. Elec.Code §§ 9202, 9205. That argument fails to recognize that the signing of a petition in this context is not simply agreeing to the content of an initiative; it also is an expression of support for that particular official proponent. If the name of the official proponent is not printed on the petition, every elector who is considering whether to sign would be re *701 quired to match the petition with public records or newspaper publications in order to glean whom the elector is designating as the official proponent. The two earlier points of disclosure identified by the Individual Plaintiffs would provide no identifying information whatsoever to an elector who is approached on the street with a petition; the elector would lack sufficient information to allow for an informed decision whether to sign. Such a disclosure scheme clearly would fail to satisfy the government’s interest in any meaningful or realistic sense.
By analogy, if ballots listed only the platforms of candidates for an office, but not the candidates’ names, undoubtedly we would not find it sufficient that voters were able to access the names and platforms of candidates from public records or from local media in order to guide voting choices. We do not permit federal candidates for public office to remain anonymous at the point of contact with voters, nor do we force voters to support federal candidates without knowing the candidates’ identities. So too here, we should uphold the decision by the citizens of Chu-la Vista to prohibit anonymous candidates for an official legislative role.
Finally, the Supreme Court has allowed those resisting disclosure to mount a successful First Amendment challenge where “they can show a reasonable probability that the compelled disclosure of personal information will subject them to threats, harassment, or reprisals from either Government officials or private parties.” Doe, 130 S.Ct. at 2820 (internal quotation marks and brackets omitted). The Individual Plaintiffs, however, have provided no evidence that shows a likelihood of harassment, and they have effectively conceded that they experienced no harassment in response to their service as official proponents to Chula Vista Measure G. Moreover, given the public role that an official proponent serves in the lawmaking process, some public pressure must be expected in order to hold that official proponent accountable to a good faith performance of his duties. Accordingly, Plaintiffs have failed to show that the compelled disclosure would subject them to threats, harassment, or unreasonable reprisals from government officials or the public.
In sum, I would hold that the disclosure regime survives exacting scrutiny because it is substantially related and narrowly tailored to the government’s interest in preserving the integrity and transparency of the electoral process by providing voters with the identity of the official proponent. Accordingly, I respectfully dissent from Part IV. I would affirm the judgment in full.

. Plaintiffs comprising the Associations are Chula Vista Citizens for Jobs and Fair Competition and the Associated Builders and Contractors, Inc. ("Associations”). Plaintiffs comprising the Individual Plaintiffs are Lori Kneebone and Larry Breitfelder ("Individual Plaintiffs”).

. In fact, California law gives an official proponent more authority than a legislator who, despite having sponsored and championed a *697 piece of legislation through the California legislature, would not have a right to intervene in court on behalf of the legislation after it had been codified. See Perry, 134 Cal. Rptr.3d 499, 265 P.3d at 1021 (noting that legislators would not be afforded the ability to intervene on behalf of a law that they had sponsored, before holding that official proponents could so intervene). The United States Supreme Court has held that an official proponent under California law is not equivalent to an elected, public official for Article III purposes under the Federal Constitution. Hollingsworth, 133 S.Ct. at 2662. The California Supreme Court, however, retains supreme authority to define the role of an official proponent under state law. See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); R.R. Comm’n of Cal. v. LA. Ry. Corp., 280 U.S. 145, 152, 50 S.Ct. 71, 74 L.Ed. 234 (1929).

. I do not reach the question whether the people's informational interest is sufficiently important, because I would hold that the government’s interest in preserving the integrity of the electoral process alone is sufficiently important to sustain the minimal burden on official proponents.